Your Honor, Michael Ullman of Ullman & Ullman, PA, and my son, Jared Ullman, who practices with me, and we're here on behalf of United Capital Funding. May it please the Court. This is almost a garden-variety, account-debtor matter until a garnishment writ got issued. I'd like to follow the guidelines of the court set, which are try to deal with the issues I think need some clarification and not have to rehash the issues that were raised on the appellate briefs. The first thing I'd like to address with the court is, there seems to be some confusion about what it is that we've pled. In our complaint, the title of it says, Ericsson's Breach of Statutory Duty to Pay United. In that complaint, we specifically identified the fact that there was a factoring agreement, that there was an underlying relationship between the buyer and the seller, in this case, Prithee Solutions, Inc. and Ericsson, Inc. And then we indicated that there was a notice of assignment. By the time that this complaint had been filed, we were aware that the garnishment proceeding had taken place. And we indicated that the breach that occurred here, in accordance with paragraph 12 of our complaint, is that there were 22 invoices that had matured and went unpaid. Counsel, let me just be sure of one thing. Was a UCC1 financing statement filed on this, and it was in effect during the entire period? That is correct, Your Honor. Full notice, and the fact, were any promissory notes involved here? No negotiable instruments. Perfection by possession issues, this is all covered by the UCC? That is correct. Now, the sufficiency of the notice, which I think is what the issue is, I'm looking at the Northwest case. And if Washington law applies, for better or for worse, isn't that the law here? Well, yes, it is, except that in the Washington case, as we noted in our response, we feel that that case was decided, well, it does. However, this Court needs to make a determination on whether it's applicable to the circumstances of this case. And in the Washington case, there was inconsistency between the notice of assignment and the conduct between the parties. If Your Honor may recall, the facts of that case indicated that notwithstanding the face of the notice of assignment, the parties had limited certain of the invoices that were being assigned and certain of the invoices that were not as a result of removal of a stamp. We don't have that situation here. But doesn't the rule that emerges from that case is that in order to reasonably identify the accounts, you have to list them? Isn't that the rule? That is the rule of that case. And why wouldn't that, if the notice here simply said, oh, why wouldn't that apply? Well, two things in direct response to Your Honor's inquiry. Firstly, we believe that that's an unacceptable interpretation of the Uniform Commercial Code. Yes, but what can we do? That's what the Court said. Well, the question is whether we could, I suppose, predict that the Washington Supreme Court would do something other than that. But that's the best guidance we have. That's true, except that the Uniform Commercial Code has been crafted and specifically provides in Article I that the courts are supposed to take into consideration interpretations that are being provided throughout the country. And that uniformity concept is important, critical, because the Uniform Commercial Code is designed to enable people throughout the country to operate so that they have predictability. I think Your Honor can evaluate that. And I do have, if I may, have one other point to address. And the second issue that I'd like to address in connection with that case, the facts of this case were that, at least for summary judgment purposes, this wasn't a trial. There's ample evidence in this record by the declarations that were filed that the notice of assignment was delivered in April of 2013. Erickson paid United Capital for over 13 months in excess. Erickson claims they didn't know they were paying United. Isn't that a factual issue? Yes, it was. Okay. That the lower court judge didn't understand or appreciate. And in addition, in explanation in response to Your Honor's direct question, we never had any suggestion by Erickson for that entire period that there was a problem. So the facts of this case are not that a party that gets a notice and ignores it questions whether it was legitimate. The questions in this case are, may a party receive a notice, honor it, pay it for some 13 or 14 months if the facts are allowed to be in dispute for purposes of summary judgment, and then after that entire period of time without ever operating under subsection C, requesting some explanation as to whether or not there really was an underlying assignment, and then for the first time, raise the argument only after they violate every rule that was required of them in the garnishment proceeding to protect themselves, and then claim that the notice was ineffective. Under the facts of this case, does that case really apply? I'm sorry, Your Honor. You were asking me a question. That's all right. I had a question. I guess I'm just trying to figure out, why did the district court look at the 22 account schedules that PREVY sent United rather than the factoring and security agreement between, I was hoping you could shed some light on that, between PREVY and United to determine whether PREVY granted United a security interest in its accounts. I can't share one ray of light on it. I'm sorry. It was a surprise to us when that ruling came out. We thought we communicated as best we could to the trial court that the security agreement that gives rise to the interest in the accounts was a factoring agreement that was entered into back in 2010. I guess, do any issues of fact still preclude, even if we, you know, agree with your position, do any issues of fact still preclude summary judgment on the issue of whether United possesses a valid security interest in the Erickson accounts? We believe the court has one of two ways to go. We believe that the court could conclude that the factoring agreement which gave us the right, the security interest, which the cases say is the equivalent of an assignment to the right to receive payment, that was accomplished in 2010. We believe that as a matter of law, we established attachment. We gave value. The debtor had rights in the collateral. And Arlene attached. We perfected. Although perfection is not necessarily critical under the circumstances of this case, we did nonetheless by filing the UCC financing statement. As of 2010, we didn't have to do anything else. And every employee in the company that we were doing business with could have left the company and gone to Hawaii, as far as we were concerned. It would not have made a difference. Arlene was effective, and every single account that that corporation created was an account that we had a security interest in and we were entitled to receive payment on. It didn't matter. I guess that is what confused me as to why the listing requirement and so on, why that makes any difference at all, since you had the filed security interest. No, but let me explain why that's done. Okay. We get a security interest as a result of the grant given to us in the factoring agreement. Right. As the relationship progresses in a factoring relationship, parties will then, they can do one of two, really one of three things. And by the way, Your Honor, did I indicate I'd like to reserve a few minutes at the end? Just keep an eye on the clock. Okay. Thank you. So number one, some factors do business under what's called non-notification or banks, where they don't require the account debtors to pay over the money to them, but they'll allow the debtor to collect them and turn them over themselves. The second one is a full notification relationship, where everybody that a factor or an asset-based lender does business with gets notice of an assignment. And then the third is that a factoring client may decide to sell certain of its accounts, meaning they deliver the invoices to the factor and ask for an advance. Sometimes the advance is 80 percent, sometimes it's 85, sometimes it's 90. When, if the invoice is $1,000 and 90 percent is advanced, $900 is given immediately. When the customer pays, the $1,000, the amount that was advanced is returned to the factor, and then the fees are assessed and the difference goes to the client. In this case, the factoring client had the right not to sell us every account. It didn't mean we didn't have a security interest in the account, and it didn't mean that we were the ones entitled to get paid. However, if we didn't buy them, there would have been a much larger value to the factoring client. When those monies came in, they would have been distributed through what's called the rebate or reserve account. So what happened here was, if they wanted us to buy certain accounts and make advances, they would list them. And that's the only distinction. The factoring agreement. That's correct. So the relief that you want is to, or let me ask you this, what relief do you want? Is it to go back to the district court and have an opportunity to prove the commercial promptness in the course of conduct? In a sense, was deemed or amended the scope of the assignment? I think that the request we would like the court to make, the request that we would like to make and ask the court to accommodate us on is as follows. If this panel believes that based on this record, we met all of the prima facie requirements that were required of us, this court, we would think, would reverse the trial court's decision and remand it with instructions to the trial court to enter summary judgment in favor of United Capital. We believe we did. We believe that the following occurred. Well, you can't do it in the face of Northwest unless we either find that we don't agree with it or that you have a defense to that, a commercial promptness defense. Unless you, if you conclude that the facts of this case don't warrant the application of that case, we would be entitled to the relief I just noted. If Your Honor did not, if this panel did not conclude that and felt that there was more required of us at the trial court level, then yes, we would have to have that remanded and explored at that point. And I want to also note for the court, in our motion for summary judgment that was filed and that was identified on page 537 of that motion, I think it's important for the court to note, as I just was indicated at the beginning of my argument, our complaint did not say we're seeking a private right of action under 9406. We never said that. We said that Erickson breached its statutory duty. The statutory duty we identified in our motion for summary judgment at page 537 is exactly what Erickson suggests we were supposed to do. It says the elements that United must prove to establish a prima facie case that Erickson breached UCC 9406 and that United is entitled to receive payment under Texas Business and Commercial Code 9607A1 and A3. Those were that, as indicated in the appendix, I know your court and your honors are very familiar with it, we specifically identified in our motion that we were relying on the very collection statute that Erickson has suggested that we are entitled to rely on. We don't believe that the forced capital decision, as late as it was raised, even if the ---- What about that? What about the waiver under 9406? In our view, in our view, what it appears to us, if I can speak candidly, is that Erickson's not suggesting that they're trying to affirm any portion of the trial judge's order, which granted summary judgment for two limited reasons. Number one, that the CEO issued a letter of resignation as to that position in office, not suggesting that she wasn't still associated with the company. And we since learned that, obviously, after we were defending the counterclaim and we served a subpoena on the bank, we fortuitously learned that she was still doing business on behalf of the company with the bank. We argued that that was a reasonable inference that could be drawn, and the trial court judge didn't agree with us. So the position we're taking is, is that the judge's ruling was that the CEO resigned, that should be no justification. She then, he then went on to say that because of the garnishment, quote, immunity, we lose. Those were the only two bases for the court's decision. Neither of those are supportable. I'd suggest that Erickson understands that because they don't try to support him. And they don't contest in any way, shape or form. They come up with 9406. That's correct. But now I'm looking at the answer, and it says, plaintiff's complaint fails to state a claim for relief. Wouldn't that satisfy then? Well, it could have encompassed, yes, Your Honor, it could have encompassed this argument, but they had the opportunity to decide what that meant. And they had that opportunity when they filed their motion for summary judgment. And never once did they raise the Forrest Capital argument. So, yes, that was permissible if they would have used it. Can I just ask you one other question? Certainly. In your choice of law, do you care whether it's Texas or Washington? I do. I'd love not to have Washington apply. Why wouldn't it apply here? Well, we think that the reason why it wouldn't apply is this case doesn't hinge on the garnishment proceeding. But that's occurring here. I'm sorry? That's occurring here, though, right? Yeah, it doesn't hinge on that. The garnishment proceeding is not pertinent to us. Uniform Commercial Code says that the account debtor is obligated to pay the assignee upon receiving notice. And if they don't, they don't get discharged. But the factoring agreement, doesn't that provide for Florida law to apply? Yes, it does. But assuming for the moment that the law, and this is a tough issue. But where do we get Texas? We've been there in a number of other cases. A few of them have already been identified that we've been handling, which is the Durham-Auckland case. But so this is what we've got. We've got a choice of law that's selected between the factoring company and its client, which is Florida. And then the question is, do we have the right to impose Florida law on a third-party account debtor who operates in Texas? I don't think we are entitled to do that. Would I like to do that? Every single time. But I don't believe we're entitled to do that. They weren't a part of the contract. They didn't negotiate it. They had no knowledge of it. But what they did have was an express agreement between themselves and our factoring client that says Texas law applied. And we've identified in our brief the five or six reasons why we believe that Washington shouldn't be even applicable. Yes, we lost the motion to transfer at the district court level in Florida, but that was because the judge believed that there was some issue about whether the parties in this case were factors or not factors. Interestingly enough, the party that we entered into the contract with has never been suggested as a factor. What, 1404 position? That's correct. That's correct. Convenience of the parties. Any other questions by my colleague? Okay. Thank you, counsel, for your argument. We'll hear from your opponent. Thank you. Good morning, Your Honor. Your Honor and Your Honor, Suzanne Pierce from Davis Rothwell on behalf of defendant and appellee Erickson, Inc. Judge Rabinio is correct that the underlying district court decision was based on two of the grounds that Erickson asserted down below in summary judgment. Judge Kunauer said that we were entitled to dismissal of UCF's sole claim against us first because Prithee's assignments to UCF were invalid, right? And that was because she had resigned? That's right. If you heard the — Is there an ostensible authority argument on that? Well, the problem is, is the assignments, the supposed assignments, this is post-factoring agreement. The factoring agreement was in 2010 prior to Prithee even entering into the subcontract with Erickson. That was 2012. And then these supposed assignments of the specific invoices between Prithee and Erickson were in 2014. And the resignation letter by Prithee's CEO was prior to any of these invoices, prior to Prithee even incurring the debt from — Was that letter sent to United? It was part of the $18 million action by Keiko against Prithee. Prithee, as part of the factoring agreement between UCF, arguably had some duties to inform UCF. We don't know — You're saying that they had an obligation to ferret out the fact that she had resigned? UCF was a garnishy defendant in that — So the letter from Prithee's CEO was attached to her declaration. That was filed as part of the collection action, the collection part of this big $18 million judgment. UCF was a garnishy defendant, as well as Erickson was a garnishy defendant. It's kind of bizarre to me, frankly, that you are saying that these folks should have been on notice of a resignation that's attached to something and part of a bigger action and so on. If you want to rely upon her not having any duties, responsibilities, why wouldn't you just notice all the people that would be affected by this and say, this woman is no longer our whatever the title was. She has no authority. Why didn't you do that? Well, and we believe that because Erickson, by the time it was sued here, this was long after the Prithee CEO — I get it, but what I'm saying is, how did they know? I don't know if they did, but any duty would not be owed by Erickson to UCF to inform — if the court below indicated that they lose in part because she had no authority, you can't have it both ways. Either they know and they act in spite of that, or they don't know and you can't blame them, right? Well, we're saying that UCF's relief, should those assignments have been invalid, was between UCF and Prithee. Perhaps, but you still can't blame them for not knowing that she no longer had authority, right? In the summary — To the degree that her signature made any difference. Well, they're arguing that she may have had some other kind of authority, but it's only an argument, and they have no evidence that she has any other authority. They say, well, on our reconsideration motion to the district court, we show that she was still listed on the bank account. But the only evidence we have is her notarized declaration saying, I've resigned as CEO, followed by these dated assignments signed by her saying, I am assigning this particular invoice under the schedule and me as CEO. Okay, but the reality is still, we don't know whether United Capital had any notice of that, right? Correct. Okay, so they don't have any notice of it. Whatever they've come up with later, it is what it is. But the reality is, they had previous documents, presumably, that were signed by her that they relied upon, right? Well, again, we're looking at two different contractual relationships, Your Honor. I understand that. I'm just dealing with this ostensible or actual authority issue first. I realize you've got different parties involved here. But to the degree they are being blamed for accepting the assignments from someone who you say no longer had authority, they have to know there's a pattern of conduct. This is a business, and as you well know in the commercial code, the norms, the practices, the business community are really, really important. And here you've got a situation where they were relying upon her before. Nobody told them. And I'm simply saying that their remedy there is to go after Prithvi. Prithvi was the one who apparently defrauded them. Prithvi was the one who wasn't complying with their factoring agreement, to which Erickson was not a party. Well, how about a year or so, you paid over $3 million, and apparently you understood the scope of the notice. No, Your Honor. You didn't know the money was going to United? Correct, Your Honor. Prithvi, as a vendor to a very large organization, sends a slip where it says, here's our bank account information, here's our routing information. Erickson, when you pay your invoice, put it to this bank account. And that periodically changed over the course of the Prithvi-Erickson vendor relationship. So we knew, or one of our departments knew, that it was going to a different account number. That was not noticed that we were actually paying UCF. The relevant notice for the UCC Section 406 argument is the dated 2010 letter that we supposedly got in 2014 that says, present and future accounts are assigned. Nothing further, and under Northwest Capital, of course, that would be insufficient. That's insufficient notice straight under the statute. So they can't have a Section 406 claim, not only because of forced capital in the later cases interpreting 406, but because they didn't have effective 406 notice. They didn't tell us which. So if the factoring agreement is giving UCF a security interest in these future obligations of Prithvi that haven't even risen to the level of a contract yet with Erickson, that's security interest. And under that factoring agreement, it says only that UCF has the right to review these and consider whether to purchase the specific invoices. Counsel, you keep citing forced capital. That's an unpublished Fourth Circuit decision. What possible relevance does that have to our case here? You realize it's not even binding in the Fourth Circuit. I recognize that, Your Honor. Erickson, again, on summary judgment, we argued four different rationales to Judge Kunauer, each of which independently could justify dismissal. Judge Kunauer looked at two of them. He said the assignments were invalid and also the garnishment immunity statute. But we also argued that the 406 notice was ineffective, and this was before the You actually argue in summary judgment because I think your adversary said that had not been raised on summary judgment. Oh, we argued it. We also argued that they didn't have, and we didn't use the words private right of action, but the fourth argument was that UCF should have sued under UCC Section 607 or some kind of collections action instead of Section 406. Now, at the time we were Do they have to say that? UCF Is that what they're suing under? No, I'm saying we argued that on summary judgment. The forced capital decision had not yet been entered. It was a year later. But in 2015, I argued on page ER 25 through 27 in my summary judgment motion. I said UCF's security interest in all of these accounts is not enforceable here. Quote, UCF must seek to foreclose on its security interest rather than simply asserting a claim against third-party Erickson. End quote. I cited Section 607. Again, forced capital wasn't yet decided at the time of the summary judgment briefing. It was at the time of the appellate briefing. But now we have UCF saying in its appellate briefing, well, I never Erickson never raised that argument that it doesn't have a private right of action. I did. And some of the rationale has been well explained by the forced capital court, the Fourth Circuit, as well as two of the district courts, the ARA case in the District of Minnesota, and the first Durham case in one of the Florida districts. So we have three district court cases that the two parties sent to you this week as supplemental authorities that are the only ones discussing forced capital. As the ARA court said, you know, there was nothing. There was no court who had said anything about whether 406 has a private right of action before forced capital. Well, I at least argued it on summary judgment. Judge Kuhnhauer didn't accept that argument, but as this panel knows, this court can affirm his decision on any basis in the record. I made that argument. And if you had your druthers, what would be the basis that you think we ought to affirm on? Well, I think there are all four, Your Honor. What's your favorite? I do think that Washington law applies. Under the Northwest case, it is explicit that this particular notice, which said only that, and this is ER 958, that Prithee, quote, have assigned their present and future accounts receivable to United Capital Funding. And this was a form letter. Now, the argument here is why didn't you address that, that in the Northwest case there was a need to separate out the ones with the sticker and the ones without the sticker. So those are the facts of this case. How does that work into this case? Because in the factoring agreement here, same as in most factoring agreements and same as in the Northwest case, while UCF was granted a security interest in all the future things that Prithee could ever do, basically, in 2010 they got that security interest. But as of — but in that factoring agreement, they only got the right to review future invoices and possibly purchase them. They hadn't purchased them in 2010. But does that mean they didn't have a security interest? Well, but then in 2012, then Prithee enters this agreement with Erickson, does work for them, is owed money by Erickson. Only after that, after Prithee does some of this work, are these specific invoices generated by Prithee, shown to Erickson, and reviewed by UCF, who decides whether or not to purchase them. Those are the schedules of accounts. And so the assignments don't actually happen until after, well after, the factoring agreement. So when in Northwest, when they're saying, well, look, the notice to the account debtor Erickson has to be specific. You have to list what are the amounts. It's because in the factoring agreement, potentially anything Prithee does could be purchased by UCF, but is not in the factoring agreement itself. Those are not purchased then. Did you have any duty to inquire as to the scope of the assignment of the notice? No. Neither UCC 406, nor the Northwest capital case, says that in order to enforce the language of 406, that the account debtor has some affirmative duty to question, hey, you know, that notice I don't think is effective. They don't have that duty. It's self-enforcing. If the factor, the assignee, doesn't have an effective notice, then they don't have an effective notice under 406, and they don't have any rights that might flow from 406. There's no private right of action, but they also can't step into the shoes of Prithee under 607, for instance. So here it's not that Erickson had to speak up and say, boy, that form letter, which has a date four years ago, is vague. We don't understand what it means. And if they don't say so, they waive that argument. Northwest capital says differently, and so does 406. You have to have the effective notice, and Erickson has a right to keep paying the assignor, Prithee, until it gets that effective notice, which it never did. So Erickson followed 406, and then at the time it got the garnishment order from the court. Instead of paying directly to Prithee, then it paid the garnishee. Okay. Any other questions by my colleagues? All right. Thank you very much for your argument. Now, counsel, you have not ---- Your Honor, could I, if you're at all interested in the Durham case ---- No. Okay. Thank you for offering. You're actually out of time, counsel. We will give you one more minute since you're the appellate here. In that case, I hope you don't mind if I speak very quickly. I'm sorry? I'll speak very quickly. You'll have to. You only have a minute. In the declaration of James McCombs that was filed in support of the motion for summary judgment at page 313, there was a communication by Prithee indicating that they were United Capital Corp. You were told they didn't know of us until a year after the fact. Their own EFT authorization form, their own EFT authorization form, which is affixed to Mr. McCombs' declaration, states that all payments will now be made to United Capital Funding Corp. at the bank account, and then at the bottom it indicates upon proper execution this authorization will become effective 15 days after the date, which was May 22, 2013. That happened more than once. Secondly, insofar as Erickson's counterclaim is concerned, in effect they want to recover damages against us because they wrongfully responded to a writ of garnishment admitting that they were liable to Prithee when they knew that the payments were to be made to... I regret to say... I'm sorry? I regret to say your time is up. Thank you, Your Honor. So we thank both counsel for your arguments. This is obviously a complex case and we appreciate the elucidation you have given. The case just argued is submitted and the court stands in recess for the day.
judges: M. Smith, Murguia, Robreno